IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| HEALTH DIAGNOSTIC | ) | Chapter 11 |
| LABORATORY, INC., *et al.*, | ) | |
| | ) | Case No. 15-32919-KRH |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| _____ | ) | |
| | ) | |
| RICHARD ARROWSMITH, | ) | |
| LIQUIDATING TRUSTEE OF THE HDL | ) | |
| LIQUIDATING TRUST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Bankr. Ct. Adv. Proc. No. 16-3271-KRH |
| v. | ) | |
| | ) | Dist. Ct. Case Nos. 3:17-cv-399-HEH |
| LATONYA S. MALLORY, *et al.*, | ) | 3:17-cv-400-HEH |
| | ) | 3:17-cv-409-HEH |
| Defendants. | ) | |

**MEMORANDUM OPINION**
(Denying Motions to Withdraw the Reference)

THIS MATTER is before the Court on three Motions to Withdraw the Reference of this adversarial proceeding from the United States Bankruptcy Court for the Eastern District of Virginia ("Bankruptcy Court") to the District Court.[1] For the reasons that

---

[1] The Complaint asserts 76 causes of action against 103 named defendants. The three instant motions were filed by twenty-three of those defendants. The first motion, docketed as case number 3:17cv399, was filed by Defendants Leah Bouton, Thomas Carnaggio, Kevin Carrier, Jerry Carroll, John Coffman, Kristin Dukes, Jason Dupin, Seneca Garrett, Erika Guest, Julie Harding, Robert Lively, Heather Lockhardt, Courtney Love, Charles Maimone, Kyle Martel, David Pember, Michael Samadani, Jennifer Speer, and Richard Yunger. The second motion, docketed as case number 3:17cv400, was filed by Defendants Patrick W. Colberg, Nicole [Tice] Finn, and Leigha [Greenwood] Stream. The third motion, docketed as case number 3:17cv409, was filed by Defendant Jeffrey Cornwell.

follow, the Court will decline to exercise its discretion to withdraw the reference and will deny the Motions.

## I. BACKGROUND

Health Diagnostic Laboratory, Inc. ("HDL"), based in Richmond, Virginia, was a provider of specialized laboratory services to physicians and other healthcare providers throughout the United States. HDL and its affiliate companies (collectively "Debtors") filed for Chapter 11 bankruptcy in the Bankruptcy Court in June 2015. In May 2016, the Bankruptcy Court approved the Debtors' Second Amended Plan of Liquidation and appointed Plaintiff Richard Arrowsmith ("Plaintiff") as trustee of the liquidating trust.

On September 16, 2016, Plaintiff initiated this adversarial proceeding by filing a seventy-six-count Complaint. The Complaint asserts that HDL and its business partners conspired to pursue a fraudulent and illegal business model. They allegedly paid illegal kickbacks to incentivize doctors to use HDL's services, unlawfully refused to accept copays to incentivize patients to agree to expensive and unnecessary laboratory tests, and paid unlawful sales commissions to third-party sales agents.

The Complaint names as defendants all of the participants in the alleged conspiracy: HDL's former directors, officers, and shareholders; its primary sales agent, a company called BlueWave Healthcare Consultants, Inc. ("BlueWave"); BlueWave's

officers and directors; and, the current movants, individual independent sales representatives contracted by BlueWave ("Movants").[2]

Movants are implicated in eight of the Complaint's counts: Counts 65 and 66, alleging assumpsit and unjust enrichment; Counts 67 and 68, alleging actual and constructive fraud; Counts 69 and 70, alleging tortious interference with contracts and business expectancies; and Counts 72 and 73, alleging common law conspiracy and violation of the Virginia Business Conspiracy Act.

Movants now seek to withdraw the reference and have this adversarial action—at least as it applies to them—litigated in the District Court rather than the Bankruptcy Court.

## II. DISCUSSION

Federal district courts have original jurisdiction over all bankruptcy matters. 28 U.S.C. § 1334. However, Congress has provided that a district court may refer its bankruptcy proceedings to a bankruptcy judge for adjudication. 28 U.S.C. § 157(a). Accordingly, by standing order issued on August 15, 1984, this Court automatically refers all bankruptcy matters to the Bankruptcy Court. But the Bankruptcy Court's jurisdiction is limited. Thus, in certain situations a case's reference to the Bankruptcy Court may or must be withdrawn back to the District Court.

A district court must withdraw the reference where the "resolution of the proceeding requires consideration of both title 11 and other laws of the United States

---

[2] BlueWave, its officers and directors, and various entities with witch it contracted to market HDL's tests have filed a separate motion to withdraw the reference. That motion will be addressed in a separate memorandum opinion and order.

regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). In all other situations, withdrawal of the reference is discretionary and is permitted "for cause shown." *Id.*

While "cause" is undefined in the statute, courts within the Fourth Circuit have consistently applied six factors in determining whether to grant discretionary withdrawal: "(i) whether the proceeding is core or non-core,[3] (ii) the uniform administration of bankruptcy proceedings, (iii) expediting the bankruptcy process and promoting judicial economy, (iv) the efficient use of debtors' and creditors' resources, (v) the reduction of forum shopping, and (vi) the preservation of the right to a jury trial." *In re QSM, LLC*, 453 B.R. 807, 809–10 (E.D. Va. 2011); *see also In re Peanut Corp. of Am.*, 407 B.R. 862, 865 (W.D. Va. 2009); *Vieira v. AGM, II, LLC*, 366 B.R. 532, 538 (D.S.C. 2007). No single factor is dispositive, rather "discretionary withdrawal of reference should be determined on a case-by-case basis by weighing all the factors presented in a particular case." *In re U.S. Airways Group, Inc.*, 296 B.R. 673, 682 (E.D. Va. 2003).

Movants bear the burden of demonstrating that they are entitled to either mandatory or discretionary withdrawal. *Id.* at 677.

As an initial matter, Movants are not entitled to, and they do not argue for, mandatory withdraw. There is no dispute that the eight claims that Plaintiff raises against

---

[3] Pursuant to 28 U.S.C. § 157, bankruptcy courts have the authority to enter final orders and judgments in "all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11." 28 U.S.C. § 157(b)(1). The bankruptcy courts may also hear proceedings that are non-core if they are "otherwise related to a case under title 11." 28 U.S.C. § 157(c)(1). However, in non-core proceedings the bankruptcy court's jurisdiction is limited to submitting proposed findings of fact and conclusions of law to the district court for de novo review and entry of final order or judgment. *Id.*; *Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2172 (2014).

Movants are state-law causes of action. Thus, resolution of these claims does not require the Court to consider "laws of the United States regulating organizations or activities affecting interstate commerce" necessitating withdrawal. 28 U.S.C. § 157(d). Withdrawal, therefore, rests entirely in the Court's discretion.

The Court finds that the six factors for discretionary withdrawal overwhelmingly weigh in favor of denying the Motions. The Court will therefore decline to withdraw the reference to provide uniform administration of the bankruptcy proceedings and to preserve the parties' and judicial resources.

Movants argue that the eight claims asserted against them are factually distinct from the Complaint's remaining sixty-eight claims. They therefore contend that withdrawal of the reference will accelerate the resolution of those eight claims. However, the Court disagrees with Movants' oversimplified characterization of the Complaint. While it is true that Movants are implicated in only a fraction of the enumerated counts, the Complaint alleges that Movants were a key component of HDL's business plan. Indeed, Movants purportedly implemented the scheme to enlist healthcare providers to use HDL's services and defraud insurers.

Moreover, even if the eight claims alleged against Movants could be considered factually unrelated to the balance of the Complaint, withdrawal of Movants' claims would result in redundant, inefficient litigation. All eight counts implicating Movants also name other, non-movant defendants. The Complaint alleges the assumpsit and unjust enrichment claims against all 103 named defendants. And the other claims against Movants—fraud, tortious interference, and business conspiracy—are also alleged against

HDL's co-founders and directors. If the Court were to withdraw the reference as to Movants, those eight claims would still remain in the Bankruptcy Court as to the other Defendants, resulting in duplicative litigation. Therefore, factors two, three, and four weigh heavily in favor of denying the Motions to withdraw the reference.

The other factors do not alter the Court's decision to deny the Motions to withdraw the reference. The first and sixth factors require the Court to consider whether the proceeding is core or non-core and whether the parties have the right to a trial by jury.[4] The practical effect of either non-core claims or a jury right is that this Court will eventually need to hold a trial and enter final judgment.[5] But neither the existence of non-core claims nor the requirement that a jury trial must be held in this Court means "that the bankruptcy court immediately loses jurisdiction of the entire matter or that the district court cannot delegate to the bankruptcy court the responsibility for supervising discovery, conducting pre-trial conferences, and other matters short of the jury selection and trial." *In re Stansbury Poplar Place, Inc.*, 13 F.3d 122, 128 (4th Cir. 1993).

Movants nonetheless argue that requiring them to remain in the Bankruptcy Court will be inefficient. They highlight the fact that this Court will be required to conduct a de

---

[4] The fifth factor, which considers the effect of forum shopping, is effectively neutral in this case and has minimal impact on the Court's analysis. Every motion to withdraw the reference necessarily contemplates the changing of forum. And certainly Movants believe they will receive some benefit by litigating in the District Court—even if only a more expeditious resolution of their claims—otherwise they would not have gone through the expense of filing the instant Motions. However, this is not the type of forum shopping that would prejudice Plaintiff in any way beyond uniformity and efficiency already addressed in the other factors.

[5] The Bankruptcy Court has the authority to conduct a jury trial pursuant to 28 U.S.C. § 157(e). However, the Bankruptcy Court may only do so with the District Court's authorization and the parties' consent. *Id.* Here, the Movants have withheld consent to a jury trial in the Bankruptcy Court.

6

novo review of the Bankruptcy Court's findings of fact and conclusions of law. They also speculate that their claims would be resolved more quickly in this Court after having been separated from the complexities of the remainder of the Complaint. But both of these arguments are unavailing.

The mere fact that the resolution of non-core claims requires a de novo review by the District Court cannot justify withdrawal. "[I]f accepted [that argument] would lead to the nonsensical conclusion that all references should be withdrawn since all dispositive matters resolved by the bankruptcy court may be appealed to the district court." *U.S. Airways Group*, 296 B.R. at 682 n.22.

Similarly, while it is likely that withdrawal of the reference would streamline Movants' involvement in this litigation, it would have the opposite effect for Plaintiff. He would be forced to simultaneously litigate the same claims in both the District Court and the Bankruptcy Court. Moreover, as noted, withdrawal of the reference would result in the courts duplicating efforts for administration of discovery and disposition of pretrial motions—with potentially disparate results.

Therefore, for the sake of judicial economy, efficient use of the parties' resources, and the uniform administration of the bankruptcy proceeding, the Court will decline to exercise its discretion to withdraw the reference.

### III. CONCLUSION

For the reasons stated above, Movants' Motions to Withdraw the Reference will be denied. The Court will direct the Bankruptcy Court to issue a Report and Recommendation at the conclusion of the pretrial phase of this adversarial proceeding.

The Bankruptcy Court shall recommend whether any motions for summary judgment of non-core matters should be granted by the District Court and whether the reference should be withdrawn for trial by jury.

An appropriate Order will accompany this Memorandum Opinion.

                                             /s/
                               Henry E. Hudson
                               United States District Judge

Date: July 19, 2017
Richmond, VA